1
2
3
4
5
6                     IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    UNITED STATES OF AMERICA,          )    CR 08-431-TUC-CKJ
                                        )
10                  Plaintiff,          )
                                        )
11   vs.                                )    **ORDER**
                                        )
12                                      )
     JULIO ALFONSO                      )
13   VALENZUELA-ESPINOZA,               )
                                        )
14                  Defendant.          )
                                        )
15   _____)

16

17          On May 29, 2009, Magistrate Hector C. Estrada issued a Report and Recommendation

18   [Doc. #84] in which he recommended that the Defendant's Motion to Dismiss Indictment for

19   Due Process and Sixth Amendment Violation [Doc. #71] and Defendant's Motion to

20   Suppress Evidence and Statements as Tainted by an Illegal Search and Seizure [Doc. #22]

21   be denied, and Defendant's Motion to Suppress Statements for Due Process and *Miranda*

22   Violation, supplemented by Defendant's Supplemental Memorandum in Support of Motion

23   to Suppress for *McNabb-Mallory* Violation [Doc. ## 21, 56] and Defendant's Motion to

24   Quash Warrant and Suppress All Evidence Obtained Thereby as Tainted by an Illegal Search

25   and Seizure (*Franks*) [Doc. #50] be granted.  On June 12, 2009, the Government filed its

26   Objection to Report and Recommendation [Doc. #87].  On the same date, Defendant filed

27   his Objections to Report and Recommendation Filed May 29, 2009 [Doc. #88].  Upon

28

1   independent review and for the reasons delineated herein, the Report and Recommendation
2   is adopted in part and rejected in part.

3

4   **I. STANDARD OF REVIEW**

5       The Court reviews de novo the objected-to portions of the Report and
6   Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear
7   error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema*
8   *Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *See also, Conley v. Crabtree*, 14
9   F.Supp.2d 1203, 1204 (D. Or. 1998).

10

11  **II. FACTUAL BACKGROUND**

12      On March 3, 2008, Special Agent Leon Van Holsbeke received information from a
13  confidential informant of "suspicious activity" taking place at 788 West Calle Colado,
14  Tucson, Arizona. Hr'g Re: Mot. to Suppress 1/23/09 [Doc. #34] at 9-11. The confidential
15  informant's information was not based on personal knowledge, but rather obtained from a
16  third party. *Id.* at 78-9. The following day, March 4, 2008, Agent Van Holsbeke began
17  surveillance of 788 West Calle Colado. *Id.* at 13-4.

18      During the course of the March 4th surveillance, Agent Van Holsbeke observed two
19  vehicles in the front of the residence. *Id.* at 14. These were a blue Pontiac Grand Am and
20  a blue and silver Ford F-150 pickup truck. *Id.* Both were observed parked in the driveway
21  of 788 West Calle Colado. Hr'g 1/23/09 [Doc. #34] at 14. Further investigation revealed
22  that the Pontiac Grand Am was registered to Dora and Carlos Gutierrez of 5610 South
23  Oakleaf Drive, Tucson, Arizona, and that the address associated with the vehicle was
24  previously involved in an alien smuggling case. *Id.* at 16-7. At approximately 2:00 p.m.,
25  Agent Van Holsbeke observed the Pontiac Grand Am leave 788 West Calle Colado and
26  followed it to 6914 S. 8th Avenue. *Id.* at 17, 87. Agent Van Holsbeke was unable to see
27  who was in the Pontiac Grand Am. *Id*. at 87. Later in the evening of March 4th, Agent Van

28

1    Holsbeke observed that the Ford pickup had been moved to the back of the residence and

2    backed up to the house.  *Id.* at 18.

3        A request to Tucson Electric Power indicated that Felicitas Montanez was the utilities

4    subscriber at 788 West Calle Colado, as well as at 6914 S. 8th Avenue, Tucson, Arizona.

5    The utilities at the Calle Colado residence had been activated on February 1, 2008 and were

6    scheduled to be turned off on March 10, 2008.  *Id.* at 11-2, 82.  Additionally, Dora and

7    Carlos Gutierrez were the property owners at 788 West Calle Colado.  *Id.* at 83.

8        On March 5, 2008 between approximately 8:00 and 8:30 a.m., Agent Van Holsbeke

9    continued surveillance at 788 West Calle Colado. Hr'g 1/23/09 [Doc. #34] at 89.  The Ford

10   pickup was again observed in front of the residence.  *Id.* at 19-20, 90.  Agent Van Holsbeke

11   also observed the Pontiac Grand Am along with a white Isuzu Rodeo parked in the driveway.

12   Agent Van Holsbeke determined that the Isuzu Rodeo was registered to Defendant Julio

13   Alfonso Valenzuela-Espinoza.  *Id.* at 22.  Agent Van Holsbeke also observed two male

14   subjects, whom were later identified as Defendant Valenzuela-Espinoza and Carlos Alberto

15   Gutierrez, in the back yard watering the ground with a hose.  *Id.* at 20.  The Ford pickup left

16   the residence sometime during the morning of March 5, 2008.  *Id.* at 23, 95.

17       At approximately 11:00 a.m. on March 5, 2008, Agent Van Holsbeke and other agents

18   from the Southern Arizona Border Initiative, an Immigration and Customs Enforcement

19   (ICE) office, congregated at 788 West Calle Colado for a "knock and talk."  Hr'g 1/23/09

20   [Doc. #34] at 23.  Agent Van Holsbeke observed two people in the front yard watering the

21   ground with a hose.  *Id.* at 25.  These individuals were later identified as Samuel Lawrence

22   Gallardo and Rene Jimenez Moreno.  *Id.*  Another adult male was observed leaving the

23   residence in the Ford pickup while speaking on a cellular telephone.  *Id*. at 25-6.

24       Agents Van Holsbeke, Avneri and Marana Police Department Officer Frank Moreno

25   and his narcotics detection canine approached 788 West Calle Colado to conduct the "knock

26   and talk."  *Id.* at 28, 30-1, 33.  As the agents pulled up to the front yard, the two individuals

27   watering the yard in the front dropped the hose and went inside the house. Hr'g 1/23/09

28   [Doc. #34] at 27.  Agents Van Holsbeke, Avneri and Officer Moreno passed through the

1    open gate and approached the front door. *Id.* at 28-9.  Prior to reaching the front door, Agent

2    Van Holsbeke observed that the screen security door was shut, but the wooden door on the

3    inside was already open. *Id.* at 33.  Agent Van Holsbeke observed that there didn't appear

4    to be any furniture inside, but there appeared to be children's toys and an assortment of trash

5    and other things scattered over the floor. *Id.* at 35-6.  Agent Van Holsbeke additionally

6    observed a large black duffle bag by the front door. *Id.* at 37.

7         Before contact could be made, however, Agent Van Holsbeke heard fellow agents

8    shouting "Stop, police, stop" from the rear of the residence. Hr'g 1/23/09 [Doc. #34] at 33,

9    105.  Agents Van Holsbeke and Avneri ran around the west side of the house and were told

10   that somebody ran out and then ran back inside. *Id.* at 35, 105.  A male wearing blue jeans

11   and a long-sleeved white t-shirt was seen running from the back of the residence to the north

12   boundary fence of the property and then back into the residence after agents shouted. *See*

13   Hr'g Re: Mot. to Suppress 2/13/09 [Doc. #47] at 64.  As Agent Van Holsbeke reached the

14   west side of the residence, he observed two males receiving instruction from ICE Agent

15   Shanley to walk toward him at the west boundary fence of the premises with their hands up.

16   *Id.* at 64-6.  These two males were then handcuffed by Agent Shanley. *Id.* at 66-7.

17        During this time, Officer Moreno remained on the porch with his canine. *Id.* at 73.

18   Officer Moreno's canine is trained to react with an aggressive alert such as scratching and/or

19   barking. *Id.* at 75.  The canine did not alert during this time; however, Officer Moreno had

20   not given a cue for it to begin searching. *Id.* at 97.

21        Agent Van Holsbeke returned to the front of the residence and continued to walk

22   eastward toward the carport, where he observed one individual to have fled after running out

23   of the house. Hr'g 1/23/09 [Doc. #34] at 37.  As Agent Van Holsbeke rounded the corner

24   to get underneath the carport, he smelled burning marijuana. *Id.* at 38-9, 109.  Agent Van

25   Holsbeke knocked on the carport storage room door and announced himself as "Police." *Id.*

26   at 40-1.  Agent Van Holsbeke repeated the knock and announce two or three times before the

27   door opened. *Id.* at 110-11.  Defendant Valenzuela-Espinoza opened the door and a large

28

1   amount of smoke came out of the room. *Id.* at 39-40.  Agent Van Holsbeke asked Defendant
2   to step outside, and he complied.  Hr'g 1/23/09 [Doc. #34] at 41-2, 110-11.

3        Agent Van Holsbeke asked if Defendant Valenzuela-Espinoza lived at the residence,
4   and ascertained that he did not speak English. *Id.* at 45.  Defendant affirmed that he lived
5   at the residence, and Agent Van Holsbeke proceeded to ask whether he was a United States
6   citizen. *Id.*  Defendant stated that he was a Mexican national. *Id.*  Agent Van Holsbeke then
7   inquired if Defendant was present in the country illegally, to which Defendant answered
8   "yes." *Id.*  Defendant was then placed under arrest.  Hr'g 1/23/09 [Doc. #34] at 46.  Officer
9   Moreno questioned Defendant further regarding the presence of contraband, weapons or
10  other people in the residence. *Id.* at 47-9; Hr'g 2/13/09 [Doc. #47] at 14, 85, 94.  Defendant
11  responded that there was "a lot" of marijuana in the residence, nodding affirmatively when
12  asked if it was more than ten (10) pounds.  Application & Aff. for Search Warrant Case No.
13  08-00092M at ¶ 10.  Meanwhile, Agent Van Holsbeke saw Mr. Gallardo sitting on a chair
14  inside the storage room with his back to the door and commanded him to stand up and show
15  his hands.  Hr'g 1/23/09 [Doc. #34] at 42.  Ultimately, Mr. Gallardo was removed from the
16  residence. *Id.* at 44.

17       Once the four individuals at the residence were detained, and the perimeter secured,
18  Agent Van Holsbeke applied for and obtained a search warrant at approximately 3:25 p.m.
19  Def.'s Exh. "A;" Search Warrant Case No. 08-00092M.  The warrant was served at the
20  Residence at approximately 4:00 p.m. *Id.*  Aside from the two males who had been arrested,
21  detained and handcuffed in the backyard and later brought through the carport storage room,
22  no one went into the carport storage room until the search warrant was served.  Hr'g 1/23/09
23  [Doc. #34] at 48; Hr'g 2/13/09 [Doc. #47] at 34, 93.

24       The evidence obtained pursuant to the search warrant from the residence was: (1)
25  99.75 kilograms of marijuana; (2) a FMJ Cobray .45/.22 caliber handgun, serial number
26  EOOOO8531; (3) one digital scale; and (4) cellphones.

27  . . .

28  . . .

## III. LEGAL ANALYSIS

### A. Defendant's Motion to Dismiss Indictment for Due Process and Sixth Amendment Violation

Neither party objects to the magistrate judge's analysis regarding Defendant's Motion to Dismiss Indictment for Due Process and Sixth Amendment Violation [Doc. #71]. After independent review, this Court does not find any evidence of clear error with regard to this section of the Report and Recommendation. As such, Defendant's Motion to Dismiss Indictment for Due Process and Sixth Amendment Violation [Doc. #71] is denied.

### B. Defendant's Motion to Suppress for McNabb-Mallory Violation

Defendant relies on *Corley v. United States*, ____ U.S. ____, 129 S.Ct. 1558, 173 L.Ed.2d 433 (2009) to argue that Defendant Valenzuela-Espinoza's statements were obtained outside of the six (6) hour "safe harbor" provision of 18 U.S.C. § 3501(a). Defendant describes the inquiry as "whether the delay is unreasonable or unnecessary considering the means of transportation and distance to be traveled to the nearest magistrate." Def.'s Suppl. Memorandum in Support of Mot. to Suppress for *McNabb-Mallory* Violation [Doc. #56] at 3. In its Objection, the Government asserts that *Corley* holds "delay for the purpose of conducting interrogation will not be excused, but pre-*Corley* decisions support the view that delays for many other reasons are justified and not grounds for suppression, particularly where there is no indication that the purpose of the delay was to extract a confession." Govt's Obj. to Magistrate Judge's R & R [Doc. #87] at 7. The Court agrees with the Government's position.

In *Corley*, the United States Supreme Court considered "whether Congress intended 18 U.S.C. § 3501 to discard, or merely to narrow, the rule in *McNabb v. United States*, 318 U.S. 332, 64 S.Ct. 608, 87 L.Ed. 819 (1943), and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), under which an arrested person's confession is inadmissible if given after an unreasonable delay in bringing him before a judge." ____ U.S.

1  ____, 129 S.Ct. at 1562.  In determining that § 3501 "modified *McNabb-Mallory* without

2  supplanting it[,]" the Supreme Court held that:

3
> [A] district court with a suppression claim must find whether the defendant
> confessed within six hours of arrest (unless a longer delay was "reasonable
4
> considering the means of transportation and the distance to be traveled to the
> nearest available [magistrate]").  If the confession came within that period, it
5
> is admissible, subject to the other Rules of Evidence, so long as it was "made
> voluntarily and . . . the weight to be given [it] is left to the jury."  *Ibid.*  If the
6
> confession occurred before presentment and beyond six hours, however, the
> court must decide whether delaying that long was unreasonable or unnecessary
7
> under the *McNabb-Mallory* cases, and if it was, the confession is to be
> suppressed."
8
*Id.* at ___, 129 S.Ct. at 1571.
9

10  The Report and Recommendation relies on this section to depict Defendant

11  Valenzuela-Espinoza's arrest for being in the United States as a "fiction."  R & R at 10.  As

12  such, Defendant's detention for eight hours and fifteen minutes prior to questioning him

13  regarding drug trafficking "was beyond the six hour 'safe harbor' of 18 U.S.C. § 3501(c),

14  and unreasonable considering the means of transportation and the distance to be traveled to

15  the nearest available magistrate judge." *Id.* at 11.  This analysis fails to consider whether the

16  delay was unreasonable or unnecessary under the *McNabb-Mallory* cases beyond mere

17  transportation issues.

18  In this case, agents first approached the house at approximately 11:00 a.m., the

19  Defendant was arrested a short time thereafter.  Additionally, three other individuals were

20  detained at the residence and the perimeter secured.[1]  Agent Van Holsbeke then prepared the

21  application for search warrant and his affidavit in support of probable cause, including a

22  conference with the AUSA.  The search warrant was presented and sworn, and ultimately

23  signed and dated by the magistrate judge at 3:25 p.m.  The agents executed the search

24  warrant at approximately 4:00 p.m.

25

26  _____

27  [1]Two of the individuals detained attempted to flee the residence when agents arrived
for a "knock and talk" and marijuana joints and debris was observed on the premises by
28  Agent Van Holsbeke upon arrest of the Defendant.

1    Execution of the search warrant included searching the residence, with at least ten (10)

2    separate rooms, as well as two vehicles parked at the residence.  Agents seized several items

3    pursuant to the search warrant including 99.75 kilograms of marijuana, a FMJ Cobray .45/.22

4    caliber handgun, serial number EOOOO8531, one digital scale, and cellular telephones.  All

5    four (4) detainees were then transported to the ICE office, separated and interviewed

6    individually.  Defendant Valenzuela-Espinoza was the last to be interviewed, resulting in

7    statements made approximately eight (8) hours after his arrest.

8    Although Defendant Valenzuela-Espinoza was initially arrested because of his

9    presence in the United States illegally, probable cause also existed regarding his involvement

10   in criminal activity at 788 West Calle Colado.  Delays resulting because of other legitimate

11   law enforcement duties or procedures do not mandate suppression.  *See U.S. v. Hensley*, 374

12   F.2d 341 (6th Cir. 1967) (delay arising from securing the scene not illegal); *U.S. v. Barrera*,

13   486 F.2d 333 (2d Cir. 1973) (delay arising from police processing procedures does not render

14   post-arrest statements inadmissible).  Furthermore, as the Government points out for the first

15   time in its Objections to the Magistrate Judge's Report and Recommendation [Doc. #87], a

16   defendant must be turned over to the United States Marshal's Service prior to 1:30 p.m. on

17   the day of presentment to the magistrate judge.  This Court takes judicial notice that it is its

18   policy that paperwork for initial appearances before the duty magistrate is required to be

19   submitted to the Court not later than 10:30 a.m. on the morning of the appearance unless

20   exceptional circumstances are present.   Here, law enforcement's initial contact with

21   Defendant did not occur until after 11:00 a.m., and based on this Court's procedures

22   Defendant would not have been presented to the magistrate judge prior to March 6, 2008.

23   In light of the facts and circumstances in this case, despite being more than six (6)

24   hours in length, the delay was not unreasonable or unnecessary, and suppression of the

25   confession is unwarranted.  *See United States v. Van Poyck*, 77 F.3d 285, 289 (9th Cir. 1996)

26   ("An overnight or weekend delay in arraignment due to the unavailability of a magistrate

27   does not by itself render the delay unreasonable under § 3501(c).")  As such, Defendant's

28

Supplemental Memorandum in Support of Motion to Suppress for *McNabb-Mallory* Violation [Doc. # 56] is denied.

### C. Defendant's Motion to Suppress Statements for Due Process and <u>Miranda</u> Violation

Defendant acknowledges that "federal agents do not need probable cause to conduct a 'knock and talk.'" Def.'s Objs. to R & R Filed May 29, 2009 [Doc. #88] at 3.  Defendant, however,  objects to the characterization of the March 5, 2008 encounter at 788 West Calle Colado as a "knock and talk." *Id.*  Defendant urges that the presence of eleven (11) agents at the residence on March 5, 2008 eviscerates any characterization of this encounter as a "knock and talk."

Agent Van Holsbeke and other agents "went to the Residence to see whether there was any validity to the secondhand information [Agent Van Holsbeke] had received regarding narcotics smuggling."  R & R at 12 (citing Hr'g 1/23/09 at 9).  Agent Van Holsbeke explained that the number of agents involved in the March 5, 2008 encounter at 788 West Calle Colado was standard procedure for a "knock and talk," stating:

> It's for officer safety issue.  If – if there was something there at the residence and/or we had gotten consent or something of a dangerous nature occurred, that there's sufficient agents there to back each other up so no one's hurt, including the general public.  In this case, it's pretty standard procedure that we go with a – a – significant number of agents to the house to do a – a knock and talk.

Hr'g 1/23/09 at 23-4.  Although eleven agents were briefed and present to coordinate the planned "knock and talk," only three individuals approached the front door of the residence – Agents Van Holsbeke and Avneri and Officer Moreno.  *Id.* at 23, 31-2.  These three were dressed in plain clothes, with bullet proof vests fully marked with "ICE" or "Police" in "bright yellow letters."  *Id.* at 31, 104.  Moreover, although armed, their weapons remained in their holsters during the initial approach of the residence.  *Id.* at 31-2.  The other agents were either waiting in unmarked vehicles on the street or otherwise dispatched to the alleyway behind the house to prevent the potential escape of suspects.  *Id.* at 99, 103.  Agents

1    Van Holsbeke, Avneri and Officer Moreno approached the front door in a casual manner.

2    Hr'g 1/23/09 at 30.

3         The Ninth Circuit stated the general rule regarding "knock and talk" encounters as

4    follows:

5         Absent express orders from the person in possession against any possible
          trespass, there is no rule of private or public conduct which makes it illegal per
6         se, or a condemned invasion of the person's right of privacy, for anyone
          openly and peaceably, at high noon, to walk up the steps and knock on the
7         front door of any man's "castle" with the honest intent of asking questions of
          the occupant there of whether the questioner be a pollster, a salesman, or an
8         officer of the law.

9    *U.S. v. Cormier*, 220 F.3d 1103, 1109 (9th Cir. 2000) (quoting *Davis v. U.S.*, 327 F.2d 301,

10   303 (9th Cir. 1964)).   The *Cormier* court affirmed that no suspicion needed to be shown in

11   order to justify a "knock and talk" and the officer's actions were properly compliant with the

12   Fourth Amendment given her brief knocking and lack of police demand to open the door.

13   *Id.*  Similarly, the Ninth Circuit Court of Appeals has upheld a "knock and talk" in which

14   multiple officers were present, but the approach was non-coercive. *U.S. v. Crasper*, 472 F.3d

15   1141, 1146 (9th Cir. 2007).  In the instant case, the agents initially approached the house for

16   the purpose of a "knock and talk."  The magistrate judge appropriately characterized the

17   initial encounter as such in the R & R.

18        Defendant further objects to the magistrate judge's characterization of the subsequent

19   encounter as a "Terry" stop.  Def.'s Objs. to R & R Filed May 28, 2009 at 4-5.  Defendant

20   relies on *United States v. Al-Azzawy* for the proposition that the Defendant was "arrested"

21   while still in his residence which was surrounded by armed federal agents. 784 F.2d 890 (9th

22   Cir. 1986).  This Court does not agree that the agents' detention of Defendant was improper

23   or otherwise violative of his Fourth Amendment rights.

24        "A seizure premised on reasonable suspicion, such as a *Terry*-stop, is not *per se*

25   unconstitutional under the Fourth Amendment, so long as it is sufficiently brief and

26   minimally intrusive." *U.S. v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004) (citing *U.S.

27   v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)).  Moreover, a

28   warrantless arrest requires probable cause and exigent circumstances. *Al-Azzawy*, 784 F.2d

at 894. "Exigent circumstances" include those in which a substantial risk of harm to an officer or the public exists, *Al-Azzawy*, 784 at 894, "the need to avoid the imminent destruction of evidence ," *Walsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), and "when entry in 'hot pursuit is necessary to prevent a criminal suspect's escape," *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). *U.S. v. Brooks*, 367 F.3d 1128, 1133 n.5 (9th Cir. 2004).

Once the agents abandoned the "knock and talk" encounter in light of the residents' attempts to flee, Agent Van Holsbeke ran around to the west side of the building. Agent Van Holsbeke saw two individuals apparently complying with commands of fellow officers and returned toward the front of the house. As he rounded the corner near the carport, Agent Van Holsbeke smelled burning marijuana. At that point Agent Van Holsbeke had sufficient probable cause to believe that criminal activity was afoot. Furthermore, Defendant Valenzuela-Espinoza had attempted to flee out the back of the residence and ran back into the carport storage room where Agent Van Holsbeke smelled marijuana. As such, both probable cause and exigent circumstances existed – the possible destruction of evidence and "hot pursuit" necessary to prevent a criminal suspect's escape, for Agent Van Holsbeke to command Defendant Valenzuela-Espinoza to open the door. Additionally, Agent Van Holsbeke's questioning of Defendant Valenzuela-Espinoza was limited to ascertaining his identity, placing him under arrest once it was determined that Defendant was in the United States illegally. *See Hayes v. Florida*, 470 U.S. 811, 816, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) (recognizing "if there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information."). Neither party objects regarding the magistrate judge's finding that the post-arrest statements by Defendant Valenzuela-Espinoza at 788 West Calle Colado on March 5, 2008 should be suppressed as violative of *Miranda*. This Court has independently reviewed for clear error the magistrate judge's decision regarding the post-arrest statements.

1  Accordingly, the magistrate judge's finding regarding Defendant's post-arrest statements at

2  the residence on March 5, 2008 will be adopted.

3

4              D. Defendant's Motion to Quash Warrant and Suppress Evidence
                                (Frank's Hearing)

5      The Government objects to three revisions of the Revised Affidavit proffered by the

6  magistrate judge in the R & R. Govt.'s Objs. to Magistrate Judge's R & R [Doc. #87] at 12.

7  The objections include: (1) the revision in paragraph 9 that the odor of marijuana was

8  observed when the carport door was opened; (2) revisions in paragraphs 8 and 9 regarding

9  the "carport storage room" being inaccessible to and from the residence; and (3) the

10 exclusion from the Revised Affidavit of the Defendant's statements that there was a lot, i.e.,

11 over ten (10) pounds, of marijuana in his house.

12     The Government's first objection is derived from the magistrate judge's finding that

13 Agent Van Holsbeke was not credible.  As such, this finding cannot be overturned by this

14 Court without a hearing.  U.S. v. Ridgway, 300 F.3d 1153 (9th Cir. 2002).  Further, the

15 magistrate judge's Report and Recommendation provides a thorough review and analysis of

16 the agent's actions in this case.  This Court agrees that Agent Van Holsbeke's affidavit in

17 support of the application for a search warrant was drafted without proper attention to detail.

18 Although Agent Van Holsbeke's detection of marijuana strengthens the Government's case

19 for probable cause, this Court does not believe its excision is fatal to the warrant.

20     The Government's second objection stems from the inclusion of a statement regarding

21 the carport storage room's accessibility to the main residence.  Agent Van Holsbeke testified

22 that at the time Defendant was arrested, he knew that the carport storage room was not

23 attached to the Residence.  Hr'g 2/13/09 [Doc. #47] at 34.  As such, this revision should not

24 be stricken.  In any event, in light of the facts and circumstances present in this case,

25 probable cause still existed for issuance of the search warrant.

26     Finally, regarding Miranda warnings, the Ninth Circuit Court of Appeals stated,

27 "Miranda warnings are not constitutional rights in themselves, but are merely standards

28

1   designed to safeguard the fifth amendment privilege against self incrimination." *U.S. v.*

2   *Lemon,* 550 f.2d 467, 473 (9th Cir. 1977) (citing *Michigan v. Tucker,* 417 U.S. 433, 443-46,

3   94 S.Ct. 2357, 41 L.Ed.2d 182 (1974)).   Although statements obtained in violation of

4   *Miranda* may not be used in the prosecution's case-in-chief, the statements may be used to

5   show defendant's consent to search.  *Id.*   The Ninth Circuit Court of Appeals extended this

6   holding to recognize that concededly voluntary statements made in violation of *Miranda* are

7   also properly used to establish probable cause for a search warrant.  *U.S. v. Patterson,* 812

8   F.2d 1188, 1193 (9th Cir. 1987).   Here, Defendant was questioned by Officer Moreno

9   regarding the presence of people, weapons or other contraband in the residence after his

10  arrest.  Defendant had not been given his *Miranda* warnings.  The record before this Court,

11  however, indicates that Defendant's statements were voluntarily made.  Indeed, Defendant's

12  statements regarding marijuana in the house is the most damaging evidence, but they are

13  uncontested by the defense.   The magistrate judge determined that Agent Van Holsbeke

14  acted in reckless disregard of the truth and made both material misstatements and omissions

15  in his Affidavit in Support of Search Warrant Case No. 08-00092M; however, Agent Van

16  Holsbeke did not question defendant at the scene beyond establishing that he was in the

17  country illegally.   The inclusion of Defendant's post-arrest statements at the residence

18  regarding the presence of marijuana were not included in the affidavit in an attempt to

19  deceive the Court.  *See U.S. v. Botero,* 589 F.2d 430, 433 (9th Cir. 1979).  As such, the

20  inclusion of the same is not fatal to establishment of probable cause.  *Id.*  Probable cause

21  clearly existed once there were attempts by various suspects to flee the premises, and

22  Defendant admitted that there was a large quantity of marijuana present in the Residence.

23  Therefore, sufficient probable cause existed for a neutral magistrate to determine that a

24  search warrant for the residence was proper.

25  . . .

26  . . .

27  . . .

28  . . .

1   Accordingly, IT IS HEREBY ORDERED that:

2   1.      The Report and Recommendation [Doc. #84] is ADOPTED in part and

3   REJECTED in part;

4   2.      Defendant's Motion to Dismiss Indictment for Due Process and Sixth

5   Amendment Violation [Doc. #71] is DENIED;

6   3.      Defendant's Motion to Suppress Evidence and Statements as Tainted by an

7   Illegal Search and Seizure [Doc. #22] is DENIED;

8   4.      Defendant's Motion to Suppress Statements for Due Process and *Miranda*

9   Violation [Doc. #21] is GRANTED;

10   5.      Defendant's Supplemental Memorandum in Support of Motion to Suppress for

11   *McNabb-Mallory* Violation [Doc. # 56] is DENIED;

12   6.      Defendant's Motion to Quash Warrant and Suppress All Evidence Obtained

13   Thereby as Tainted by an Illegal Search and Seizure (*Franks*) [Doc. #50] is DENIED; and

14   3.      The Affidavit in Support of Search Warrant Case No. 08-00092M shall be

15   revised pursuant to the Report and Recommendation [Doc. #84] and as modified by this

16   Order.

17   DATED this 27th day of August, 2009.

18

19                                          Cindy K. Jorgenson
20                                          United States District Judge

21

22

23

24

25

26

27

28